UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEBORAH SCHMIDT AND JAMES SCHMIDT,** <br><br> Plaintiffs, <br><br> v. <br><br> **WELLS FARGO BANK, N.A.,** <br><br> Defendant. | Civ. No. 2:17-cv-01708 (WJM) <br><br><br> OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs Deborah and James Schmidt filed this action on March 14, 2017, against Wells Fargo in connection with Plaintiffs' home loan modification agreement. The complaint alleges that Wells Fargo made misrepresentations to Plaintiffs about their eligibility for a more favorable loan modification; that it misapplied at least one mortgage payment, without explanation; that it failed to provide information about its servicing of Plaintiffs' loan; and that it violated federal law by using an automatic dialing system to repeatedly contact Mrs. Schmidt by phone without her consent. The matter now comes before the Court on Wells Fargo's motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. *See* Fed. R. Civ. P. 78(e). For the following reasons, Wells Fargo's motion to dismiss is **GRANTED in part** and **DENIED in part**.

I. BACKGROUND

Plaintiffs Deborah and James Schmidt purchased their house in Randolph, New Jersey in 2002 by money mortgage with BNY Company LLC. Complaint ("Compl.") ¶ 2. On August 29, 2007, Plaintiffs refinanced their house with Defendant Wells Fargo Bank at an annual interest rate of 6.375%. Certification of Aaron M. Bender in Support of Defendant's Motion to Dismiss (the "Bender Cert.") Ex. B. Plaintiffs made timely mortgage payments through 2008 and 2009 despite serious financial difficulty. Compl. ¶ 4. They were eventually granted a 6-month moratorium on payments from January to June of 2010. *Id.* Plaintiffs allege they made timely payments from July 1, 2010 through January 3, 2012.

On April 9, 2009, and December 22, 2009, Plaintiffs applied for a modification under the Home Affordable Mortgage Program ("HAMP"), a federal program launched in the wake of the 2008 financial crisis to help distressed home owners avoid foreclosure. *See Heyman v. Citimortgage, Inc.*, 2014 WL 4637034, at *1 (D.N.J. 2014). Plaintiffs were denied HAMP modifications both times, because they were not yet three months behind on their mortgage payments. Compl. ¶ 4. Plaintiffs allege that on February 19, 2010, "Darian at Wells Fargo . . . suggested that since by then plaintiffs were behind almost 3 payments, they should request a HAMP modification." Compl. ¶ 4. Deborah Schmidt submitted a HAMP modification request on March 15, 2010. *Id.* at 6. Plaintiffs were again denied a HAMP modification—this time because Wells Fargo wanted to monitor the progress of Deborah's new business before determining eligibility for a modification. *Id.* at ¶ 7. Meanwhile, Plaintiffs were given an additional six-month moratorium and instructed by Wells Fargo employee Ben Montang to apply for reconsideration at the end of the moratorium. They did so, but were denied again for a HAMP modification. *Id.*

Although Plaintiffs were deemed ineligible for the HAMP program, they agreed to a "non-HAMP" loan modification on October 9th, 2012. Plaintiffs assert that the terms of the modification were unfavorable and that they agreed only out of desperation in order to avoid foreclosure. Wells Fargo allegedly failed to provide Plaintiffs with an amortization schedule or to answer questions about the loan structure despite numerous attempts by Deborah Schmidt to communicate with Wells Fargo by phone and in person. Compl. ¶ 24.[1]

Plaintiffs allege that on January 27, 2012, Wells Fargo refused to accept Plaintiffs' mortgage payments. Compl. ¶ 4(c). Debora Schmidt made several in-person visits to one of Defendant's locations but was unable to "straighten out the issue of the misapplied payment." Compl. ¶ 15. According to the complaint, all payments between August 2012 and August 2016 were timely made. Compl. ¶ 19. They fell behind on their mortgage in September, 2016 but were again denied a modification.[2] Plaintiffs received a foreclosure notice on January 15, 2016. Compl. ¶ 19. Plaintiffs insist that all payments were made timely between August 2012 and January 2016. *Id.* Plaintiffs brought this action on March 14, 2017. A foreclosure complaint was brought against them on March 22, 2017, in the Morris County Superior Court of New Jersey Chancery Division. Bender Cert. Ex A. The complaint further alleges that between January 2013 and January 2017 Plaintiffs received a torrent of "robo-calls" concerning Plaintiffs' debt to Plaintiffs' home and cell phones. Compl. ¶ 22.

---

[1] According to Plaintiffs, the modification did not include a late-fee waiver that had been promised by Wells Fargo. Compl. ¶ 24(b). However, it is unclear how this assertion fits into Plaintiffs' claims.

[2] On May 11, 2015, Defendant assigned the mortgage to HSBC Bank, USA ("HSBC"). Bender Cert. Ex. C. Wells Fargo continued as the loan's servicer.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, to make it "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949 (2009).

## III. DISCUSSION

The Court addresses each of Plaintiffs' five Counts in order. Count 1 alleges that Wells Fargo violated the Real Estate Settlement Procedures Act (RESPA) by failing to respond to a written request for information about Plaintiffs' 2012 loan modification. Count 2 alleges that Wells Fargo committed fraud by misrepresenting to Plaintiffs that they were ineligible for a modification under the Home Affordable Mortgage Program (HAMP), forcing Plaintiffs to sign a predatory loan modification instead. Count 3 alleges that Wells Fargo breached the covenant of good faith and fair dealing implied in the parties' loan modification agreement. Count 4 alleges slander of credit. And Count 5 alleges that Wells Fargo violated the Telephone Consumer Protection Act (TCPA) by repeatedly using an automatic dialing system to contact Plaintiff Deborah Schmidt regarding late mortgage payments. Plaintiffs' TCPA claim plausibly states a basis for relief; Counts 1 through 4 do not.

### A. Plaintiffs' RESPA Claim

Congress passed RESPA "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the [real estate] settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C.A. § 2601 (West). The statute requires a servicer to acknowledge and respond to any

"qualified written request"[3] for information made by a borrower. The servicer must make any appropriate corrections to the borrower's account or otherwise conduct an investigation into the error and provide the borrower with a written explanation or clarification. 12 § U.S.C.A. § 2605(e) (West). According to the complaint, Wells Fargo failed to respond to a qualified written request by Plaintiffs regarding a payment which the bank failed to credit to their mortgage account.

The Court finds that Plaintiffs' RESPA claim fails to put Wells Fargo on "fair notice of the . . . 'grounds' on which the claim rests." *Bell Atlantic Corp. et al. v. Twombly et al.*, 550 U.S. 544, 555 n. 3 (2007). Although Plaintiffs contacted Wells Fargo on numerous occasions regarding the unapplied payment, the complaint does not specify if and when Plaintiffs sent the bank a "qualified written request." The Court is unable to infer that Wells Fargo failed to satisfy its requirements under RESPA if the complaint does not allege facts indicating that such requirements were triggered by a qualified written request. Plaintiffs' RESPA claim fails.

### B. Common Law Fraud

In New Jersey, fraud consists of: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (N.J. 1997) (citing *Jewish Ctr. Of Sussex Cnty. v. Whale*, 432 A.2d 521 (1981)). The heightened pleading standard under Federal Rule of Civil Procedure 9 requires that a complaint "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Although HAMP does not create a private cause of action, it does not preempt state law claims that arise from the HAMP loan modification process. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012).

The complaint alleges that Wells Fargo knowingly misrepresented that Plaintiffs were ineligible for a HAMP modification, and that in reasonably relying on this misrepresentation Plaintiffs accepted a "non-HAMP" modification under inferior terms. Compl. ¶ 30. The bare allegation that "defendant felt free to lie to [Plaintiffs] and tell them they were not [eligible]" when in fact Plaintiffs were eligible for a HAMP modification does not "state with particularity the circumstances constituting fraud." F.R.C.P. 9(b). The Court cannot discern from the complaint what Wells Fargo specifically lied about. To hold otherwise would expose loan servicers to allegations of fraud every time a borrower's

---

[3] The statute defines "qualified written request" as:

> [A] written correspondence . . . that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C.A. § 2605(e)(1)(B).

request for HAMP modification is denied. The Court must heed Rule 9's instruction that a "a part must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).[4]

### C. Breach of Contract – Good Faith and Fair Dealing

To state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid contract, (2) that the opposing party failed to perform under the contract, and (3) that the breach caused the plaintiff to sustain damages. *See, e.g.*, *EnviroFinance Group, LLC. v. Envtl. Barrier CO., LLC.*, 440 N.J. Super. 325, 346 (N.J. Super. Ct. App. Div. 2015). Further, "[a] covenant of good faith and fair dealing is implied in every contract in New Jersey." *Wilson v. Amerada Hess Corp.*, 773 A.3d 1121, 1126 (2001). *See Palisades Property, \*561 Inc. v. Bruneti*, 44 N.J. 117, 130, 207 A.2d 522, 560-61 (1965). In other words, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Wilson*, 77 A.3d at 1126. The covenant reflects the principal that performance should be consistent with "the reasonable expectations of the parties." *Id.* at 1130.

Plaintiffs allege that Wells Fargo breached the contract by failing to provide certain information about the terms of the 2012 loan modification, including an amortization schedule for "step" payments, a basis for the calculation of a back-end balloon payment, and an explanation for the allocation of initial and trial payments. The complaint also alleges that Wells Fargo refused to credit a payment and instead erroneously asserted that Plaintiffs were a month behind in payments. Compl. ¶ 31. Assuming that this conduct amounts to a breach of the implied covenant of good faith and fair dealing, it is not at all clear from the face of the complaint how such a breach caused Plaintiffs to sustain damages. Either way, Plaintiffs would presently be in default and facing foreclosure. Without a causal relationship between a breach and damages, Plaintiffs cannot sustain a claim for breach of contract. *See e.g.*, *EnviroFinance Group LLC.*, 113 A.2d at 345.

### D. Slander of Credit

Slander of credit—a species of defamation law— consists of the "the publication, or communication to a third person, of false statements concerning the plaintiff, his property, or his business." *Sarlo v. Wells Fargo Bank, N.A.*, 175 F.Supp.3d 412, 427 (D.N.J. 2015) (citing *F.D.I.C. v. Bathgate*, 27 F.3d 850, 871 (3d. Cir. 1994)). Plaintiffs allege that Wells Fargo falsely reported to credit bureaus that Plaintiffs defaulted in August 2016, when in fact Plaintiffs did not default until September 2016. Compl. ¶ 33.

Plaintiffs' claim is preempted by the Fair Credit and Reporting Act (FCRA). "No requirement or prohibition may be imposed under the laws of any State with respect to subject matter regulated under [the FCRA], relating to the responsibilities of persons who

---

[4] There is no need to address Wells Fargo's statute-of-limitations or causation arguments at this time.

furnish information to consumer reporting agencies." 15 U.S.C.A. § 1681t(b)(1)(F). "That admonishment leaves no room for state law claims against furnishers of information . . . regardless of whether those claims are couched in terms of common law or state statutory obligations." *Burrell v. DFS Serv.*, 753 F.Supp.2d 438, 451 (D.N.J. 2010); *Edwards v. Equable Ascent, FNCL, LLC.*, 2012 WL 1340123, at * 7 (D.N.J. Apr. 16, 2012) ("This Court has adopted a total pre-emption approach."); *Henderson v. Equable Ascent Fin. LLC*, 2011 WL 5429631 (D.N.J. Nov.4, 2011) ("This Court finds the 'total preemption' approach . . . to be most faithful to the plain language and intended scope of Section 1681t(b)(1)(F)."); *Nonnenmacher v. Capital One*, 2011 WL 1321710 (D.N.J. Mar. 31, 2011) ("By enacting Section 1681t(b)(1)(F), Congress 'wanted to eliminate all causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies.'")(citations omitted). Plaintiffs' slander-of-credit claim is unsustainable.

### E. Telephone Consumer Protection Act

The Telephone Consumer Protection Act (TCPA) prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C.A. § 227 (b)(1)(A)(iii). The TCPA creates a private cause of action for actual monetary damages and statutory damages in the amount of $500 for each violation. § 227 (b)(3)(B).[5]

The complaint alleges that Deborah Schmidt received many calls on her home and cell phones from Wells Fargo advising her that Plaintiffs were late on a payment, when in fact they were not. Compl. ¶ 34. Plaintiffs allege that the calls were made using an automatic telephone dialing system, beginning in early January of 2013 and ending in January 2017. *Id.* at ¶ 22. According to Plaintiffs, some of these calls were made even after Mrs. Schmidt asked to be removed from the automatic dialing list. Compl. ¶ 22.

Wells Fargo argues that the complaint fails to specify the number of calls made or dates on which they occurred. *Id.* Further, Wells Fargo argues that Plaintiffs consented to receiving phone calls by providing their home and cell phone numbers in connection with the loan process. Memo. Supp. Wells Fargo's Mot. Dismiss 18. It cites to the Sixth Circuit's decision in *Hill v. Homeward* for the proposition that "when [a borrower] gives his creditor his cellphone number in connection with a debt he owes . . . this constitutes 'prior express consent' to be called on that number about the debt." 799 F.3d 544, 548 (6th Cir. 2015).

The Court finds that Plaintiffs have adequately stated a claim under the TCPA. Wells Fargo does not deny that it contacted Plaintiffs using an "automatic telephone dialing system." Plaintiffs are not required at this stage of litigation to specify the exact dates and

---

[5] Treble damages are available at the court's discretion for willful or knowing violations. § 227(b)(3)(C).

times of each call; that information will be more accessible to Plaintiffs in discovery. *See Stewart v. T-Mobile USA, Inc.*, 124 F.supp.3d 729, 733 (D.S.C. 2015) ("[The] Complaint need not allege the exact dates and times of the calls in order to notify T–Mobile of its purported violations of the TCPA."). *Cf. Owens v. Starion Energy, Inc.*, 3:16-cv-01912 (VAB), 2017 WL 2838075, at *6 ("District courts throughout the country have consistently held that a complete telephone number is not required at this stage.").

The argument that Plaintiffs consented to the calls rings hollow. Assuming that Plaintiffs initially gave express written consent by providing their phone numbers in their loan modification application, *see* Certification of Aaron M. Bender, Ex. F. A, the complaint clearly states that Mrs. Schmidt instructed Wells Fargo to be removed from the automatic dialing list. Compl. ¶ 22. The Court must assume that this assertion is true. *See Armstrong Surgical Str., Inc., v. Armstrong Cty. Mem'l Hosp.*, 185 F.3d 154, 165 n. 1 (3d Cir. 1999) ("In ruling on a motion to dismiss, the court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff."). Under these circumstances, consent is treated as revoked. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272 (3d Cir. 2013) (denying a 12(b)(6) motion and holding that "the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems."); *Watkins v. Wells Fargo Bank, N.A.*, Civ. No. 15-5712 (RMB/KMW), 2017 WL 2399086, at *6-7 (D.N.J. June 2, 2017). Wells Fargo's motion to dismiss the TCPA claim is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) is **GRANTED in part** and **DENIED in part**. Counts 1 through 4 are **DISMISSED without prejudice**. The motion is denied with respect to Count 5, which adequately states a claim under the Telephone Consumer Protection Act.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**September 14, 2017**