UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEBORAH SCHMIDT AND JAMES SCHMIDT,**<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>**WELLS FARGO BANK, N.A.,**<br><br>　　　　Defendant. | Civ. No. 2:17-cv-01708<br><br>**OPINION** |

**FALK, U.S.M.J.**

　　　　This matter comes before the Court on Plaintiffs Deborah and James Schmidt's Motion for Leave to Amend the Complaint. ECF No. 28. For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

**I.　　RELEVANT FACTS AND PROCEDURAL HISTORY**

　　　　The underlying facts of this Case were laid out in the Court's September 14, 2017 Opinion ("2017 Opinion"), familiarity with which is assumed. *See Schmidt v. Wells Fargo Bank, N.A.*, No. 2:17-cv-01708, 2017 WL 4074025 (D.N.J. Sept. 14, 2017), ECF No. 11. In the 2017 Opinion, the Court dismissed all of plaintiffs Deborah and James Schmidt's ("Plaintiffs'") claims against defendant Wells Fargo, N.A. ("Defendant") except those brought under the Telephone Consumer Protection Act ("TCPA"). Since then, the parties stipulated to the dismissal of the TCPA claims related to calls made to Plaintiffs' cellular telephone number ending in 0721. Order (July 30, 2018), ECF No. 37. This leaves the TCPA claim related to calls made to Plaintiffs' home phone as the only surviving claim.

　　　　Since the 2017 Opinion, a related state court foreclosure action—*HSBC Bank v. Deborah A. Schmidt*, No. F-8075-17 ("Foreclosure Action")—proceeded to judgment. The New Jersey Chancery court found that Defendant is entitled to $413,743.25 and ordered that Plaintiffs' house be sold to satisfy the debt. Murphy Aff., Ex. 4, ECF No. 36-2.

　　　　In June 2018, Plaintiffs filed the current Motion for Leave to Amend ("Motion"), attaching a brief in support ("Plaintiffs' Brief") and a proposed amended complaint ("PAC"). ECF No. 28. The PAC adds or amends three claims for alleged (1) violations of the New Jersey Consumer Fraud Act ("CFA"); (2) violations of the Real Estate Settlement Procedures Act ("RESPA"); and (3) invasion of privacy and intrusion on seclusion ("IPIS"). Defendant opposed the Motion ("Defendant's Brief"), arguing that "[a]mendment of the Complaint is not only futile, but is intended by Plaintiffs only to delay resolution of this action, interfere with state court proceedings, waste judicial resources, and cause Defendant to incur unnecessary costs." Def. Br. at 1, ECF No. 36. Having received no reply, the Motion is ripe for decision.

1

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs motions to amend. At this stage, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend is generally granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The ultimate decision to grant or deny leave is in the courts' discretion. *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1970).

The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). The proposed amended claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

As Defendant's Brief focuses almost exclusively on futility (and the Court finds Defendant's other arguments unconvincing), the Court will similarly focus on the futility analysis. As detailed below, amendment would be futile as to Plaintiff's proposed CFA and IPIS claims, but not as to the revised RESPA claim.

### A. New Jersey Consumer Fraud Act Claims

Plaintiffs' proposed CFA claims stem from Defendant "routinely cheat[ing] mortgage customers—including the [P]laintiffs—by applying payments first to late fees and costs, in contravention to the stated terms of the mortgage"; "failing to properly credit payments . . . under the trial payment plan"; "not disclosing the amount of the balloon payment" or providing an amortization schedule, despite an agreement to provide them; and "refusing to correct the problem[s] despite [being] aware."[1] PAC ¶¶ 37a-38a.

CFA claims require "(1) unlawful conduct by defendant; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Dabush v. Mercedes-Benz USA, LLC*, 874 A.2d 1110, 1115 (N.J. App. Div. 2005). Unlawful conduct includes any deception, fraud, false promise, or misrepresentation. N.J.S § 56:8-2. As to the ascertainable loss requirement, "[a]t the very least, a consumer must be able to quantify or measure what loss he has suffered or will suffer as a result of the unlawful conduct." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 300 (D.N.J. 2009).

---

[1] The "refusal to correct" allegation appears derivative of the other issues Plaintiffs complain of, and thus will not be analyzed separately.

2

Defendant argues Plaintiffs fail to plead each of these elements, that the CFA claim is merely an attempt to revive Plaintiffs' already-dismissed fraud claim, and the CFA claim is barred by *res judicata* and collateral estoppel. Def. Br. at 13.

### 1. Plaintiffs' Refusal to Provide Information Allegations Are Deficient

With respect to Plaintiffs' claims based on a refusal to provide information on the balloon payment and amortization schedule, Plaintiffs did not suffer an ascertainable loss. Plaintiff merely pleads the loss "will be ascertainable when defendant provides discovery." PAC ¶ 39. Though Plaintiffs need not allege a precise figure, they must provide some methodology from which a figure could be calculated. *See Arcand*, 673 F. Supp. 2d at 300. Further, by only alleging losses that "will be ascertainable," Plaintiffs essentially guarantee that the Court cannot find causation. Without knowing what the loss is, the Court cannot find that the alleged unlawful conduct caused that loss.

### 2. Plaintiffs' Misappropriation Allegations State a Cause of Action

The misappropriation theories do allege an ascertainable loss "in the amount of the payments misapplied and due to inaccuracies in the balance owed due to the failure to properly credit payments." PAC ¶ 39. As to the other elements, it is reasonable to infer Plaintiffs accepted the loan terms and made payments because they assumed those terms would be applied. But contrary to the loan terms, payments were misappropriated to fees or not counted at all (i.e., a misrepresentation). *See* N.J.S § 56:8-2. This injured Plaintiffs in the amount the loan balance was not reduced, and payments not counted. *See* PAC ¶ 39.

### 3. The Misappropriation Allegations Cure Deficiencies Previously Identified

Defendant argues "Plaintiffs attempt to relitigate their dismissed breach of contract and fraud claims without alleging new facts or curing the deficiencies in the original complaint." Def. Br. at 18 (capitalization adjusted). Defendant is wrong. The Court dismissed Plaintiff's common law fraud claim because it "could not discern from the complaint what Wells Fargo specifically lied about." 2017 Op. at 4. The Court dismissed Plaintiff's breach of contract claim because it was "not at all clear from the face of the complaint how such breach caused Plaintiff to sustain damages." *Id.* at 5. The PAC fixes both those problems: Plaintiffs now allege Wells Fargo lied about how payments would be credited and makes clear how that lie damaged them. *See* PAC ¶¶ 19, 37a-38a.

### 4. *Res Judicata* (Claim Preclusion) Bars Plaintiffs' Misappropriation Claims

"Both New Jersey and federal law apply *res judicata* . . . when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 279 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 2296 (2017) (citations omitted). Despite the "on the merits" language, "default judgments can support

3

*res judicata*." *Shah v. United States*, 540 F. App'x 91, 93 (3d Cir. 2013) (citation omitted); *see also In re Hawkins*, 231 B.R. 222, 229-30 (D.N.J. 1999) (listing cases).

"The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). In New Jersey foreclosure proceedings, "[o]nly germane counterclaims and cross-claims may be pleaded." N.J. Ct. R. 4:64-5. "Germane counterclaims are those that arise out of the mortgage that is the basis of the foreclosure action . . . and include claims relating to payment[,] discharge, and incorrect computation of the amounts due." *Mantovani v. Wells Fargo Bank, N.A.*, No. 18-CV-0886, 2018 WL 3849907, at *4 (D.N.J. Aug. 13, 2018) (citations and internal quotation marks omitted).

Here, Plaintiffs' misappropriation-based CFA claims are barred by *res judicata* (i.e., claim preclusion). First, the claims are "germane" to the foreclosure. Plaintiffs allege Defendant misapplied or failed to credit mortgage payments, thus misrepresenting the total amount due. *See Mantovani*, 2018 WL 3849907, at *4 (defining "germane" to include claims related to payment and the incorrect computation of amounts due). Therefore, the claims could have been brought in the Foreclosure Action. *See* N.J. Ct. R. 4:64-5. Second, a final judgment has already been rendered. *See* Murphy Aff., Ex. 4. Third, the Foreclosure Action included Plaintiffs and Defendant's privy. *See* Murphy Aff., Ex. 1.A at 1. Fourth, the CFA claims are based on the same cause of action as a counterclaim asserted in the Foreclosure Action would have been.

Therefore, Plaintiffs' CFA claims would not survive a motion to dismiss, and the current Motion—as to the CFA claims—is **DENIED** as futile.

### B.  Revised Real Estate Settlement Procedures Act Claims

The Court previously dismissed Plaintiffs' RESPA claim because Plaintiffs did not adequately allege they made a qualified written request ("QWR") triggering RESPA's requirements. 2017 Order at 4. Plaintiffs now allege they sent a "Notice of Error" on March 27, 2017 ("NoE"). PAC ¶ 25a; Pl. Br. at 11. Defendant argues that (1) the NoE fails to qualify as a QWR; (2) RESPA did not require a response because of pending litigation; and (3) Plaintiffs failed to allege damages. Def. Br. at 22-23.

#### 1.  Plaintiffs Letter Is a Qualified Written Request

RESPA requires a loan servicer that receives a QWR to provide a written response and make appropriate corrections or explain why corrections are unnecessary. 12 U.S.C. § 2605(e)(2). To qualify as a QWR, a communication must (1) be in writing; (2) "include[], or otherwise enable[] the servicer to identify, the name and account of the borrower"; and (3) "include[] a statement of the reasons for the belief of the borrower . . . that the account is in error." 12 U.S.C. § 2605(e)(1)(B).

The PAC alleges the NoE was in writing. PAC ¶ 25a. As Plaintiffs received a written response, the Court will infer the NoE included information sufficient for Defendant to identify the name and account of the borrower. PAC ¶ 25b; *see Iqbal*, 556 U.S. at 678. The issue is whether the NoE sufficiently notified Defendant of the reasons

for the alleged error.  *See* 12 U.S.C. § 2605(e)(1)(B).  The NoE claims Defendant "reflected our loan as past due since inception of the loan modification.  However, as the attached Customer Account Activity Statement provided by Wells Fargo on January 26, 2016 shows there were timely monthly payments from August 1, 2012 through January 15, 2016, the date of this activity statement."  This is clear enough.  Plaintiffs believed the account was in error because Wells Fargo asserted it was past due despite timely payments.  Therefore, Plaintiff adequately alleged they sent a QWR.  *See* 12 U.S.C. § 2605(e)(1)(B).

### 2. Defendant Was Required to Respond Despite Active Litigation

Defendant asserts it "has no obligation to respond to an alleged error that was being litigated in Court."  Def. Br. at 25-26.  Defendant's only authority for the proposition is a single bankruptcy court decision, *In Re Wiggins*, No. 12-26993 (JKS), 2016 WL 7115864, (Bankr. D.N.J. Dec. 6, 2016).  In *Wiggins*, the court noted (without citation): "*it would seem* that a mortgage servicer *should not* be obligated to respond to requests for information outside the context of litigation" when the requests for information were made "after this adversar[ial] proceeding had been filed *and dismissed*."  *Id.* at *1 (emphasis added and original emphasis removed).  The court went on to find that the defendants' "reliance upon [the prior dismissal] was justified and finds it hard to imagine that [d]efendants' response could be the basis for a damage claim" before holding none of the communications related to "servicing" the loan, as required by RESPA.  *Id.*  Given the bankruptcy court's aspirational language, factual differences with the current matter, (e.g., a dismissal *before* the QWS), the alternative holding, and a lack of support for a "litigation exception" in the statute, this Court finds Defendant's argument unpersuasive.

### 3. Plaintiffs Adequately Alleged Damages and Causation

Defendant argues Plaintiffs failed to adequately allege damages and causation.  Def. Br. at 26.  To state a claim, plaintiffs must allege "(1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of § 2605."  *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016) (citations omitted).  Plaintiffs do not allege a pattern or practice.  They do, however, allege that the failure to appropriately respond caused "additional emotional distress since [Plaintiffs] fear and believe they are victims of Wells Fargo's fraudulent and illegal behavior and that the situation is hopeless[, causing] plaintiff Debbvie [sic] Schmidt to suffer from anxiety and emotional distress."  PAC ¶ 43.

In analyzing emotional distress claims, courts scrutinize complaints to ensure they adequately allege a causal nexus with the RESPA violation (as opposed to general anxiety related to a potential foreclosure).  For example, in *Vilkofsky v. Specialized Loan Servicing, LLC*, the court found sufficient the allegations that plaintiff's distress "stemm[ed] from worry caused by his sense that [defendant] ignored his cries for help; his concern regarding [defendant]'s failure to investigate his claims; his belief that he has been cheated by [defendant]; and his concern that he is not being taken seriously by [defendant], all of which may result in the loss of Plaintiff's home."  No. 2:16-CV-01291-NBF, 2017 WL 2573874, at *5 (W.D. Pa. June 14, 2017).

5

Here, Plaintiff makes similar allegations to those in *Vilkofsky*. The Court can easily infer from the facts alleged that Defendant's failure to properly respond to the NoE contributed to Plaintiffs' emotional distress separate and apart from their fear of foreclosure. By blocking Plaintiffs' attempt at a non-judicial remedy to the issues with their mortgage, Defendant's response deepened Plaintiff's sense of hopelessness. *See* PAC ¶ 43. Thus, the PAC adequately alleges the non-compliant RESPA response caused Plaintiffs' damage, namely, emotional distress. *See Vilkofsky*, 2017 WL 2573874, at *5.

Therefore, Plaintiffs' revised RESPA claims would survive a motion to dismiss, and the current Motion—as to the RESPA claims—is **GRANTED**.

### C. Invasion of Privacy and Intrusion on Seclusion Claims

Plaintiffs allege IPIS liability based on Defendant's "harass[ment of P]laintiff with unending phone calls regarding her debt . . . despite [P]laintiffs['] instructions to [Defendant] to stop calling." PAC ¶¶ 22, 44. Defendant argues the PAC does not allege sufficient facts regarding the calls. Def. Br. at 29-31.[2]

IPIS liability may attach when the defendant "intentionally intrudes . . . upon the solitude or seclusion of another or his private affairs or concerns if the intrusion would be highly offensive to a reasonable person*." Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1115 (N.J. 2009) (original ellipses omitted) (quoting Restatement (Second) of Torts, § 652B (1977)). With respect to debt collection calls, "it is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded." *Tamayo v. Am. Coradious Int'l, L.L.C.*, No. CIV.A. 11-6549 JLL, 2011 WL 6887869, at *4 (D.N.J. Dec. 28, 2011) (quoting Restatement (Second) of Torts, § 652B, cmt. D).

The PAC does not allege facts sufficient for the Court to find Defendant "hounded" plaintiff. *See* Restatement (Second) of Torts, § 652B, cmt. D. Plaintiffs did not plead the number, frequency, or timing of the calls.[3] Instead, the PAC merely asserts the calls were

---

[2] Defendant also makes two alternative arguments. First, the statute of limitations bars the claim. The Court finds this unconvincing. It is the cumulative nature of the calls that Plaintiffs complain of (which continued until January 2017) and the proposed IPIS claim relates back to the original complaint. *See* N.J. Ct. R. 4:9-3. Second, Defendant cites *Buckley v. Trenton Saving Fund Society* for the proposition that reliance on emotional distress damages requires allegations of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Def. Br. at 30 (quoting *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988)). That is not at all what *Buckley* stands for. The quoted language is the standard for an intentional infliction of emotional distress claim, not a pleading standard for emotional distress damages. Defendant should be careful to avoid (intentionally or not) misleading the Court.

[3] The PAC does characterize the calls as "unending," "harassing," "constant," and "incessant[]." PAC ¶¶ 22, 44. But these characterizations are not specific enough to justify a conclusion that the PAC alleges *facts* sufficient to state a claim that is plausible on its face.

6

"unreasonable" and "highly offensive," causing Plaintiffs' "privacy to be violated" and "significant emotional distress." PAC ¶ 44-36. Once the Court sets aside those legal conclusions, *see Iqbal*, 556 U.S. at 678, the PAC fails to sufficiently allege IPIS liability.

Therefore, amendment would be futile and the Motion is **DENIED** as to the proposed IPIS claims.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Amend the Complaint is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs may file an amended complaint including the proposed RESPA claims set forth in the PAC. However, amendment as to the CFA and IPIS claims would be futile, and thus no amendment will be permitted.

An appropriate order follows.

    s/Mark Falk
**MARK FALK**
**Dated: November 30, 2018**     **United States Magistrate Judge**