# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **DEBORAH SCHMIDT AND JAMES SCHMIDT,**<br><br>Plaintiffs,<br><br>v.<br><br>**WELLS FARGO BANK, N.A.,**<br><br>Defendant. | 2:17-cv-01708<br><br>**OPINION** |

### WILLIAM J. MARTINI, U.S.D.J.:

This matter arises out of Plaintiffs Deborah and James Schmidt's ("Plaintiffs'") mortgage with Defendant Wells Fargo Bank, N.A ("Defendant"). The matter comes before the Court on Defendant's motion for judgment on the pleadings. ECF No. 65 ("Motion"). For the reasons set forth below, the motion is be **GRANTED**.

### I. BACKGROUND

The underlying facts of this case were set forth in the Court's previous opinions, familiarity with which is assumed. *See* ECF Nos. 11, 38, 49. As relevant here, Plaintiffs' case has been narrowed to two counts of alleged violations of the Real Estate Settlement Procedures Act ("RESPA"). *See* Amend. Compl. ¶¶ 29, 40-43 (hereinafter, "AC"). Both Counts (One and Seven) are based on Defendant's alleged failure to adequately respond to a request for information sent by Plaintiffs to Defendant on March 27, 2017 ("March Letter"). *Id.*

Defendant filed an answer to the AC on May 30, 2019. ECF No. 64 ("Answer"). The next day, Defendant moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c). ECF No. 65 (hereinafter "Motion"). After failing to meet the deadline to file an opposition, Plaintiff requested an extension, which the Court granted on July 16. ECF Nos. 66-67. Despite the Court's directive that if "Plaintiffs fail to file opposition papers by July 29, 2019, [the AC] **SHALL** be dismissed with prejudice," ECF No. 67, Plaintiff failed to oppose the motion until July 31, ECF No. 68 (hereinafter, "Opposition"). In a reply memorandum, Defendant pointed out Plaintiffs' failure to meet the Court's deadline. ECF No. 69 (hereinafter, "Reply"). The Court issued a text order declining to dismiss the case as a sanction but permitting Defendant to file supplemental briefing. ECF No. 70. Defendant did so on August 14. ECF No. 71.

### II. STANDARD OF REVIEW

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010). FRCP 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). "[A]ll allegations in the complaint must be accepted as true, and

1

the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

In the Motion, Defendant posits three reasons the AC should be dismissed: (1) the March Letter is not a valid "qualified written request" ("QWR") under RESPA, (2) even assuming the March Letter is a QWR, Defendant complied with its obligations under RESPA, and (3) Plaintiff cannot establish damages caused by the alleged RESPA violation. In their Reply, Defendant also encourages the Court to dismiss the AC as a sanction for failure to follow a court order.

### A. **Qualified Written Request**

Defendant argues the March Letter is not a QWR that would trigger any obligations under RESPA. Mot. at 11-15. In a November 30, 2018 opinion, Chief Magistrate Judge Mark Falk analyzed the same argument and found the Letter (as described in a proposed amended complaint) satisfied the requirements of a QWR. Op. at 4-5 (November 30, 2018), ECF No. 38. The Court sees no reason to disrupt Judge Falk's opinion and adopts his reasoning here. *Id.*

Defendant's primary argument is that the March Letter lacked the requisite specificity to be a QWR. Mot. at 13-15. But as Judge Falk explained, the March Letter asserts:

> Defendant "reflected our loan as past due since inception of the loan modification. However, [] the attached Customer Account Activity Statement . . . shows there were timely monthly payments from August 1, 2012 through January 15, 2016 . . . ." This is clear enough. Plaintiffs believed the account was in error because Wells Fargo asserted it was past due [since inception of the loan modification] despite timely payments. Therefore, Plaintiff adequately alleged they sent a QWR. *See* 12 U.S.C. § 2605(e)(1)(B).

Op. at 5 (November 30, 2018). Defendant's references to various cases around the country do not mandate otherwise. First, none of the cited authority is binding on this Court. Second, the only case from this jurisdiction is irrelevant. In *Schepisi v. Santander Bank*, the complaint failed to reference a written correspondence regarding "covered errors" under RESPA. *Schepisi v. Santander Bank*, 18-cv-15006, 2019 WL 699959, at *3 (D.N.J. Feb. 20, 2019). Here, the AC quotes the March Letter, which sought to remedy an error regarding repayment of Plaintiffs' loan.

Defendant's remaining argument that the March Letter did not concern "servicing" the lone is unpersuasive. Plaintiffs asked Defendant to correct errors regarding, *inter alia*, their monthly payments and for an amortization schedule, both related to loan "servicing." *See* 12 U.S.C. § 2605(i)(3) (defining "servicing" as "receiving any scheduled periodic payments").

2

## B. Litigation Exception

Defendant alternatively argues that assuming the March Letter is a QWR, its response satisfied RESPA. Defendant explains that Wells Fargo immediately acknowledged the March Letter, provided an amortization schedule as requested, and advised that its investigation was ongoing. Mot. at 16-17 (citing Answer Exs. 8-11, ECF No. 64-1); *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (permitting consideration of undisputedly authentic documents that form the basis of this lawsuit). Defendant "then notified Plaintiff that the review had concluded" because Plaintiffs filed this lawsuit. Mot. at 17. That determination—and the communication thereof—forms the basis of Plaintiffs' claims. *See* AC ¶¶ 29(a), 41. Therefore, the issue is whether Defendant was permitted to stop investigating due to Plaintiffs filing suit.

Once again, the Court agrees with Judge Falk's decision not to read a "litigation exception" into the statute. Op. at 5 (November 30, 2018). Defendants do not cite any statute or regulation providing for such an exception and the Court is unconvinced by the sources referenced. *See* Opp. at 15-18. First, Judge Falk was correct as to the relevance and persuasiveness of *In Re Wiggins*, No. 12-26993 (JKS), 2016 WL 7115864, (Bankr. D.N.J. Dec. 6, 2016). *See* Op. at 5 (November 30, 2018). Second, in *Bullock v. Ocwen Loan Servicing, LLC*, the defendant's response was deemed substantively sufficient and the court did not rely on a litigation exception. 14-cv-3836, 2016 WL 1588494, at *2 n.6 (D. Md. Apr. 18, 2016).[1] Third, in *Muathe v. Wells Fargo Bank*, "[b]ecause plaintiff's requests for information concerned loss mitigation and loan modification, rather than ordinary payments, his requests were not in regard to the servicing of his loan and are therefore not covered by RESPA." 18-cv-2064, 2019 WL 635407, at *3 (D. Kan. Feb. 14, 2019). Here, the March Letter accuses Defendant of improperly crediting, *inter alia*, "timely monthly payments" between 2012 and 2016. AC ¶ 25(a). Finally, the two Southern District of Florida cases presented separate issues to the one here. *See Cunningham v. Nationstar Mortg. LLC*, No. 15-14274-CIV, 2015 WL 12556162, at *2 (S.D. Fla. Oct. 20, 2015), *report and recommendation adopted*, No. 2:15-CV-14274, 2015 WL 12533152 (S.D. Fla. Nov. 9, 2015) (dismissing RESPA claims under *Rooker-Feldman* and *res judicata* doctrines); *Eveillard v. Nationstar Mortg. LLC*, 14-cv-61786, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015) (dismissing for lack of damages).

## C. Duplicative or Overbroad Nature of Request

Defendant additionally argues that the March Letter was overbroad and duplicative, and thus required no response. Mot. at 18-19. Defendant is correct as to the law. "A servicer is not required to comply [RESPA's response and investigation requirements] if the servicer reasonably determines that . . . [t]he asserted error is substantially the same as an error previously asserted by the borrower . . . [or t]he notice of error is overbroad." 12 C.F.R. § 1024.35(g).

---

[1] The referenced portion of the Federal Registrar in *Bullock* does not create a litigation exception either. It explains that RESPA "should [not] replace or supplant civil litigation document requests and should not be used as a forum for pre-litigation discovery," and thus servicers need not respond to overbroad or unduly burdensome requests. Mortgage Servicing Rules Under the RESPA (Regulation X), 78 FR 10696-01 (discussing 12 C.F.R. § 1024.36(f)(1)(iv)). But that does not mean that active litigation relieves a servicer's obligations to respond to tailored, appropriate QWRs under RESPA.

As to duplicity, Defendant points to its responsive letter to an earlier inquiry by Plaintiffs. Answer Ex. 8 at 2. But that letter does not address any inquiry Defendant did into alleged payment errors. *See id.* Nor does defendant provide the original request to which that letter responded. Thus, the Court cannot determine whether the March Letter was duplicative.

As to overbreadth, a failure to respond is only justified "if the servicer *reasonably determines* that . . . [t]he notice of error is overbroad." 12 C.F.R. § 1024.35(g) (emphasis added). Here, Defendant had a different reason for declining to investigate—active litigation. Ans. Ex. 11; AC ¶ 41. Therefore, the Court will not accept Defendant's *post hoc* justification that it "reasonably determined" the March Letter was "overbroad" and thus had no obligation to respond. 12 C.F.R. § 1024.35(g).

### D. <u>Damages</u>

"[I]n order to bring a claim under RESPA, a plaintiff must sufficiently allege one of two types of damages: (1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements." *Giordano v. MGC Mortg., Inc*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016). Defendant argues Plaintiff failed to allege either type of damages, and thus the case should be dismissed. Mot. at 19-27. As to statutory damages, Plaintiffs concede they "did not allege in their complaint that Wells had engaged in a pattern and practice of RESPA violations." Opp. at 4. Accordingly, the Court need not address statutory damages at this juncture. *See supra* Part II.

As to actual damages, Judge Falk found sufficient Plaintiffs' allegation "that the failure to appropriately respond caused 'additional emotional distress since [Plaintiffs] fear and believe they are victims of Wells Fargo's fraudulent and illegal behavior and that the situation is hopeless[, causing] plaintiff Debbvie [sic] Schmidt to suffer from anxiety and emotional distress.'" Op. at 5 (November 30, 2018). The Court adopts Judge Falk's conclusion as to the existence of actual damages in the form of emotional distress. *See id.*

### E. <u>Causation</u>

Defendant alternatively argues the emotional distress was not caused by the RESPA violation. The Court agrees that Plaintiffs failed to plausibly allege causation. *See* 12 U.S.C. § 2605(f)(1)(A) (permitting damages "*as a result of* the failure." (emphasis added)).

The original Complaint—filed before the March Letter on which both RESPA claims are based—also contained an allegation of emotional distress: "Plaintiff has suffered . . . emotional distress due to defendant's threats and the uncertainty of obtaining the relief they required." Compl. p. 8, ECF No. 1. While the original Complaint alleged a RESPA claim, it was not based on the March Letter, and thus the purported distress could not have been caused by the RESPA violations alleged here. Therefore, the Court finds the general claim of emotional distress damages in Plaintiffs' prayer for relief insufficiently tied to the alleged RESPA violation here. AC at p. 10.

Plaintiffs also specifically allege that "[t]he failure to respond to the notice of error caused the plaintiffs additional emotional distress since they fear and believe they are victims of Wells Fargo's fraudulent and illegal behavior and that the situation is hopeless. This has caused plaintiff Debb[]ie Schmidt to su[f]fer from anxiety and emotional distress." AC ¶ 43.

The Court need not accept the conclusory statement that "[t]he failure to respond to the notice caused the plaintiffs additional emotional distress . . . ." *See Iqbal*, 556 U.S. at 678 (finding courts need not accept legal conclusions and threadbare recitals of elements). As to the "fear and belie[f] they are victims of Wells Fargo's fraudulent and illegal behavior and that the situation is hopeless," that fear predated Defendant's notice that it would cease investigating the alleged errors. Plaintiffs filed the Complaint on March 14, 2017, accusing Defendant of common law *fraud* and breach of contract. Compl. ¶¶ 29-32. Therefore, Plaintiffs had already concluded they were victims of Defendant's alleged "fraudulent and illegal behavior" by the time they sent the March Letter (March 27, 2017), and certainly by the time Defendant sent the allegedly damaging notice (April 21, 2017). *Compare id.*, *with* AC ¶ 43, *and* Answer Exs. 8, 12. Further, Plaintiffs' fear and hopelessness could not have been caused by Defendant's "failure to respond," AC ¶ 43, because Defendant did, in fact, respond to the March Letter and provided some of the requested information, *see* Answer Exs. 9-11. Similarly, Plaintiff Debbie Schmidt's "anxiety and depression" were explicitly linked to the fear and hopelessness the Court finds insufficiently related to the RESPA violation, AC ¶ 43, and thus do not save Plaintiffs' RESPA claims.

In sum, the Court finds Plaintiffs' conclusory statements of causation insufficient. *See Giordano*, 160 F. Supp. 3d at 785 (finding no causation despite alleged "stress, anxiety and emotional distress that occurred when MGC failed to respond to the RFI and QWR letter"). As Judge Linares put it, "[i]f a plaintiff simply can allege that failure to respond to a letter caused distress, without more, any RESPA claim would survive a motion to dismiss." *Id.* Accordingly, Defendant's motion for judgment on the pleadings is **GRANTED**.[2]

### F. <u>Leave to Amend</u>

Defendant asks the Court to dismiss with prejudice and preclude Plaintiffs from filing another amended complaint. Generally, amendment is permitted absent "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed . . . , [or] futility of amendment." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, further amendment would be futile. As Defendant points out, when Plaintiffs filed the original Complaint (before sending the March Letter), they "had already made up their mind about [Defendant]'s conduct." Mot. at 21; *see also* Reply at 11. They believed Defendant acted fraudulently and illegally, causing emotional distress. *Compare* Compl. ¶¶ 29-32, *with* AC ¶ 43, *and* Answer Exs. 8, 12. Even the AC's more specific allegations tie the "additional" emotional distress to Defendant's allegedly fraudulent and illegal behavior. *See* AC ¶ 43 ("The failure to respond to the notice of error caused the plaintiffs additional emotional distress *since they fear and believe they are victims of Wells Fargo's fraudulent and illegal behavior* and that the situation is hopeless." (emphasis added)). Plaintiffs fail to set forth any plausible theory under which Defendant's notice—not the alleged fraud or impending foreclosure—caused their distress. Without citation or further explanation, Plaintiff simply asks for "an opportunity to cure any

---

[2] The Court also rejects Plaintiffs' theory that Defendant's response caused damage to the extent they incurred costs sending the March Letter. That theory would swallow both the damages and causation elements, *see id.*, and raise Article III standing concerns, *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-181 (2000).

deficiency by amending the complaint." Opp. at 5, 7. As the Third Circuit has affirmed, that is insufficient. *See Woodend v. Lenape Reg'l High Sch. Dist.*, 535 F. App'x 164, 168 (3d Cir. 2013).[3]

### G. Sanction for Failure to Timely Respond

Defendant requests that the Court dismiss this matter with prejudice as a sanction for failing to meet the Court's deadlines. Reply at 1-7. The Court need not decide that issue, as Defendant is entitled to judgment on the pleadings.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the pleadings, ECF No. 65, is **GRANTED**. An appropriate order follows.

Date: October 8, 2019

WILLIAM J. MARTINI, U.S.D.J.

---

[3] Plaintiffs' offer to add allegations related to statutory damages is immaterial. *See* Opp. at 4. Statutory damages are only permitted *in addition* to actual damages. *See* 12 U.S.C. § 2605(f)(1) ("any *additional* damages . . ." (emphasis added)); *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 719-20 (8th Cir. 2018) ("A borrower cannot recover 'additional' damages under § 2605(f)(1)(B) without first recovering actual damages."); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 n.4 (11th Cir. 2016) ("[T]he use of 'additional' seems to indicate that a plaintiff cannot recover pattern-or-practice damages in the absence of actual damages." (*dicta*)). *But see Palmer v. MGC Mortg., Inc.*, 13-cv-1734, 2013 WL 6524648, at *6 (E.D. Pa. Dec. 10, 2013) (finding *either* statutory or actual damages sufficient, without citation or analysis).

6